**Holland RICHARD, Administrator of the Estate of Beverly Richard, Deceased, Appellant,**

v.

**ADAIR HOSPITAL FOUNDATION CORPORATION, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1978.

Rehearing Denied April 14, 1978.

Discretionary Review Denied June 27, 1978.

---

1. *See also* KRS 533.060(2), effective June 19, 1976.

Robert L. Dowell, Greensburg, William A. Miller, Louisville, for appellant.

Earl Huddleston, Columbia, Joe B. Campbell, Campbell & Crandall, Bowling Green, for appellee.

Before HOWERTON, REYNOLDS and LESTER, JJ.

REYNOLDS, Judge.

The father, as administrator of his deceased infant's estate, appeals from Adair Circuit Court's summary judgment which dismissed action for wrongful death.

Appellant alleged that on March 14, 1973 the appellee, Adair Hospital Foundation Corporation, negligently denied on two occasions emergency room admission to his infant child who thereafter died on March 15, 1973. The issue raised upon this appeal is the correctness of the summary judgment.

The limited proof in the record consists of the parents' depositions and that. of Dr. W. H. Bryant. Briefly, the parents testified that on the morning of the fourteenth the child was sick, refused to eat and was crying. The first trip was made to appellee hospital around 1 p. m. where the parties stopped their vehicle at the emergency room door. The mother and baby remained in the vehicle while the appellant entered upon the premises and informed a nurse as to the baby's sick condition. According to appellant's testimony, the appellee's nurse refused to examine the infant or call a doctor. Thereafter appellant was unsuccessful in locating a doctor at any of their offices. The parties returned around 3 or 3:30 p. m. and again parked at the appellee's emergency room door. Appellant re-entered the hospital and advised the same nurse that the baby was worse. The nurse went to the parked vehicle, felt the baby's head and said there was no emergency. The parents' testimony would indicate that the baby was breathing harshly and screaming. The infant was not admitted to the hospital. Later the child was transported to a Glasgow hospital emergency room where she was admitted at 12:35 a. m. on March 15. Dr. Bryant's brief medical deposition reflects that upon his initial examination at the Glasgow hospital the 6-month old child was in critical condition. The diagnosis was bronchial pneumonia and emergency medical procedures were undertaken. The child died within five hours. There is no medical testimony to apprise the court of the child's condition when admission was sought at appellee hospital. The testimony of Dr. Bryant was to the effect that with any type of infection the sooner it is treated the better .chance you have of effecting a cure, and that the child's chances of recovery would have been substantially greater and better had she been treated at 1 p. m. or 3:30 p. m. on March 14. At this stage the trial court determined that there was no genuine issue as to any material facts insofar as the element of causation had not been established. We disagree. In *Ruvio v. North Broward Hospital*, 186 So.2d 45 (Fla.1966), it was held that decedent's wife had failed to establish that any action or inaction on the part of the hospital was the proximate cause of the death of her husband, and a verdict was directed in favor of the hospital. In that case, however, the

medical testimony was to the effect that the delay in admission to the hospital would not have made any difference as to the demise of plaintiff's decedent. In this case, the sole medical testimony was to the effect that the child's chance of recovery would have been substantially better had treatment been rendered when the child was presented to the Adair County Hospital. Neither are *Walden v. Jones*, Ky., 439 S.W.2d 571 (1969) or *Jarboe v. Harting*, Ky., 397 S.W.2d 775 (1965) dispositive of the case on appeal. In *Walden, supra*, a verdict was directed in a medical malpractice action for physicians at the conclusion of the plaintiff's evidence. There, evidence of proximate causation between any negligence of the physicians and plaintiff's paralysis was insufficient to raise jury issues since the only medical testimony supporting the plaintiff's position as to proximate cause was to the effect that the plaintiff might have had a chance but probably would not have recovered even if there had been no negligence. There was no such testimony in the case at bar. In *Jarboe, supra*, a directed verdict in a medical malpractice case was affirmed in part and reversed in part. There, evidence of culpable negligence in making an erroneous diagnosis of a uterine tumor instead of pregnancy was sufficient to make a submissible case for the jury on a claim for injuries attributable to an unneeded operation. But the evidence was insufficient to take to the jury on whether the operation was the proximate cause of the patient's miscarriage 22 days later because there was no medical testimony that the operation probably did cause the miscarriage, nor was there any evidence of any signs or symptoms of impending abortion between the time of the operation and the occurring miscarriage. *Walden, supra*, and *Jarboe, supra*, are distinguished from this case.

In *Barcia v. Society of New York Hospital*, 39 Misc.2d 526, 241 N.Y.S.2d 373 (1963), the New York Supreme Court was faced with an analogous case. An admitting physician turned away a two-year-old child suffering from pneumonia. The child died the next day from the delay of treatment. Considering testimony that time is of the essence in the treatment of pneumonia, the court refused to accept defendant's expert's testimony, that even if there had been no delay the child would have died, as a matter of law and rejected such a contention as a matter of fact.

*Hill v. Ohio County*, Ky., 468 S.W.2d 306 (1970), does not support summary judgment in this case. *Hill, id.*, involved a clear non-emergency situation where a county hospital denied obstetrical care to a pregnant woman. She was dead on arrival at Owensboro Hospital. In a non-emergency situation there is no duty on the part of a county hospital to admit or treat a patient in the absence of an order from her physician. Courts, though, have carved from the general no-duty-to-admit rule a view that where a hospital refuses care in an emergency situation, liability may be predicated upon such refusal. See *Annot.*, 35 A.L.R.3d 841 (1971) and cases cited therein. In cases involving pneumonia, courts have recognized that liability could properly be predicated upon the refusal to admit a patient because of the emergency situation involved. See *Wilmington General Hospital v. Manlove*, 54 Del. 15, 174 A.2d 135 (1961) and *Barcia, supra*.

We feel that the proper disposition of this case is dependent upon the determination of whether appellee was negligent in twice refusing hospital admission to the infant, based upon the child's condition when admission was requested, when an unmistakable emergency situation may have existed. This presents an issue of fact for a jury. In *Hill, supra*, the court has quoted from *Manlove, supra*, at 141 as follows:

> In the circumstances we think the case should go back for further proceedings. We should add, however, that if plaintiff cannot adduce evidence showing some incompetency of the nurse, or some breach of duty or some negligence, his case must fall. Like the learned judge below, we sympathize with the parents in their loss of a child; but this natural feeling does not permit us to find liability in the absence of satisfactory evidence.

The distinction drawn in *Walden, supra,* and *Jarboe, supra,* that the causal connection between accident and injury must be shown by medical testimony that causation is probable and not merely possible, is a matter of degree. Given the medical testimony in this case, that it could safely be said that this child's chances of recovery *would have been substantially greater and better had she been treated earlier,* a summary judgment was premature.

The judgment is reversed.

All concur.