**Patricia M. DEUTSCH, Movant,**

v.

**Melvin SHEIN, M.D. and Melvin Shein, M.D., P.S.C., Respondent.**

Supreme Court of Kentucky.

March 11, 1980.

Rehearing Denied May 13, 1980.

Edward M. Post, Taustine, Post, Berman, Fineman & Kohn, Louisville, for movant.

John T. Ballantine, Stephen A. Watkins, Ogden, Robertson & Marshall, Louisville, for respondent.

LUKOWSKY, Justice.

This is an appeal from a judgment of the Jefferson Circuit Court which dismissed the claim of Mrs. Deutsch for damages from Dr. Shein for physical and mental pain and suffering. The Court of Appeals affirmed. We reverse and remand for a new trial on the issue of damages only.

On January 22, 1974 Mrs. Deutsch visited Dr. Shein, a board certified internist, for diagnosis and treatment of the cause of her nausea, weakness, and other symptoms. The circumstances of this consultation were hotly disputed. What is not in dispute, however, is that Mrs. Deutsch was not tested for pregnancy, that she was hospitalized from January 23–29, and that numerous diagnostic x-rays and other radiological tests were performed on her person. Mrs. Deutsch's complaints continued unabated and she again visited Dr. Shein on February 5.

She went to see Dr. Levine, the obstetrician/gynecologist who had delivered her first two children, on February 18. Dr. Levine's examination revealed she was about ten weeks pregnant. Mrs. Deutsch

became upset upon learning of her condition, explaining to Dr. Levine she had seen various articles which stated that x-rays administered to a pregnant woman could injure the fetus she carried. Dr. Levine inquired into the diagnostic x-rays given Mrs. Deutsch and determined there was a serious risk her fetus had been damaged. He recommended that if Mrs. Deutsch decided upon an abortion, it should be performed within the week.

Mrs. Deutsch consulted her pediatrician who also stated that an abortion was "medically indicated," but refused to advise her to have or not have an abortion. She then visited with her priest, who emphasized the Church's negative position on abortion. She also discussed her situation with relatives. Mrs. Deutsch decided to terminate her pregnancy by abortion on February 22.

At trial Dr. Shein introduced respectable medical testimony to the effect that the amount of diagnostic radiation administered to Mrs. Deutsch did not warrant a therapeutic abortion. The case was submitted to the jury upon special interrogatories. The jury found that Dr. Shein failed to use that degree of care and skill which is expected of a reasonably competent practitioner specializing in internal medicine, acting in the same or similar circumstances, by not obtaining a pregnancy test before Mrs. Deutsch was administered x-rays. The jury further found, however, that Dr. Shein's failure to obtain a pregnancy test, coupled with the administering of x-rays, was not a substantial factor in causing the injury of which Mrs. Deutsch complained.

Neither party to this appeal disputes the correctness of so much of the verdict as found Dr. Shein to be negligent. This contested point was resolved by the jury against Dr. Shein. Further, as to the standard of care, Dr. Shein's own testimony established that if Mrs. Deutsch's version of the visit was believed his handling of the case did not meet the standard of care. Necessary expert testimony to establish that the defendant failed to conform to the required standard of care may consist of admissions by the defendant doctor. *Jar-*

*boe v. Harting,* Ky., 397 S.W.2d 775, 778 (1965). There was sufficient evidence in the record to support the jury's finding of negligence. This portion of the judgment must stand.

Mrs. Deutsch maintains that the evidence conclusively establishes that as a matter of law Dr. Shein's negligence was a substantial factor in causing her mental and physical pain and suffering. We agree that reasonable minds cannot differ on the conclusion that the negligence of Dr. Shein was a substantial factor in causing the *irradiation* of Mrs. Deutsch *during* an early period of her *pregnancy,* for which she sought further medical advice and services and, therefore, in causing her at least some trauma. The extent of Mrs. Deutsch's damages must be determined at a new trial. For the reasons set out below, this portion of the judgment must be reversed.

The breach of the required standard of care by an actor can produce a result similar to that of a snowball rolling down a hill. The initial consequence of the snowball may be slight. But as the snowball rolls down the hill its increasing size and momentum take on a character of their own which can cause injury of a magnitude far beyond the imagination of the one who set the snowball in motion. Nevertheless, the law is that between the negligent actor and the injured innocent, the innocent should recover compensation, unless the law cuts off the expansion of the negligent actor's liability as a matter of public policy. For instance, the law might not, as a matter of policy, impose liability where the snowball has roared to the foot of the hill and disintegrated sending several rocks to neighboring peaks to begin the process anew.

Liability for a negligent act follows a finding of proximate or legal cause. Proximate cause is a legal term which defies precise definition, though many have valiantly tried. See discussion in *Dale v. E. R. Knapp & Sons, Inc.,* Ky., 433 S.W.2d 880, 883 (1968). The Restatement of Torts, Second sec. 431 analyzes proximate cause so:

"What Constitutes Legal Cause

The actor's negligent conduct is a legal cause of harm to another if

(a) his conduct is a substantial factor in bringing about the harm, and

(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

The Restatement, Second analysis represents a conversion of the substantial factor test from another ineffective test for proximate cause into a vehicle used to find *causation in fact.* Proximate cause, then, consists of a finding of causation in fact, *i. e.,* substantial cause, and the absence of a public policy rule of law which prohibits the imposition of liability. *See* 57 Am.Jur.2d Negligence, sec. 147. This substantial cause is explained:

"In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. [T]his is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes."

Restatement of Torts, Second sec. 431, Comment a.

The Supreme Court of Wisconsin expressly stated, "[P]ublic policy considerations are regarded as an element of legal cause, although not a part of the determinations of cause in fact, which this court refers to as 'substantial factor.'" *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis.2d 515, 217 N.W.2d 383, 385 (1974). Other jurisdictions are not as blunt, however, and couch the public policy considerations in terms of "forseeability of injury," "orbit of risk," "zone of danger," or "intervening and superseding causes." *See* 57 Am.Jur.2d Negligence sec. 174. The use of such terms is an attempt to develop public policy in the form of rules of substantive law to insure certainty of decision and predictability of result. The use of "public policy" in the raw as a liability limitation is a more flexible approach.

This court in *Claycomb v. Howard,* Ky., 493 S.W.2d 714, 718 (1973) approved the Restatement 2d sec. 431 substantial factor test as a means by which the jury could find legal cause and therefore fix responsibility for the harm done to the plaintiff. Implicitly reserved in that decision but expressly declared in other opinions, are the collective substantive policy rules which limit responsibility for a negligent act. For example: *Donegan v. Denny,* Ky., 457 S.W.2d 953 (1970) defined a superseding cause, and *House v. Kellerman,* Ky., 519 S.W.2d 380 (1975) held that whether a particular act was a superseding cause is a matter of law; *Dale v. E. R. Knapp & Sons, Inc., supra,* discussed the relationship of "forseeability" to proximate cause; and *City of Covington v. Keal,* 280 Ky. 237, 133 S.W.2d 49 (1939) with *Brown Hotel Company v. Marx,* Ky., 411 S.W.2d 911 (1967) allow the injured plaintiff to recover for aggravation of the original injury by subsequent negligent medical treatment. While this collection is not intended to be exclusive, it does serve to demonstrate how, *sub silentio,* this court has followed the Restatement 2d approach to proximate cause employing "substantial factor" to find causation in fact and therefore proximate cause where there is no substantive rule of law liability limitation.

In *House v. Kellerman, supra* at 382 n. 2, we suggested, but had no occasion to decide, that basic causation itself should be treated as a matter of law, leaving the issues of negligence only to the jury. Because our resolution of this case does not necessitate expression upon this point, we likewise decline to do so here. We simply point out

that legal cause currently presents a mixed question of law and of fact.

We believe that once the jury found Dr. Shein to have been negligent in not administering a pregnancy test to Mrs. Deutsch, reasonable minds cannot differ on the issue of whether this negligence was a substantial factor in causing harm to her, *i. e.*, irradiation while she was carrying a fetus. The jury's finding in the negative was encouraged by the use of "substantial factor in causing the injury of which Mrs. Deutsch complained" in the instructions. Our use of the substantial factor test in fashioning instructions in prior cases shows the test applies to the *event* which results in the injury, not the injury itself. *See, e. g., Harris v. Thompson*, Ky., 497 S.W.2d 422, 431 (1973) ("substantial factor in causing the accident"); *House v. Kellerman, supra* at 385 ("substantial factor . . accident"). The injury need only flow directly from the event.

At the trial much testimony was introduced on the questions of whether actual fetal damage would have occurred as a result of the irradiation and whether abortion was recommended therapy. Such evidence is relevant only to the questions of breach of standard of care on the part of Dr. Shein and of whether the medical advice given by Mrs. Deutsch's physicians was extraordinary. The first point was determined adversely to Dr. Shein at trial. We are convinced that the evidence of Dr. Shein taken in the light most favorable to him demonstrates at most Mrs. Deutsch may have been given incorrect advice, certainly not that the same was extraordinary as the term is used in the Restatement of Torts 2d, section 457, comment a.

It is established law that the "injured person is required to use ordinary care and reasonable diligence to secure appropriate treatment of the injury; when he has exercised that care, he may recover damages to the full extent of his injuries, even though the doctor engaged for such treatment omits to use the most approved remedy, or the best means of cure, or fails to exercise as high a degree of care or skill as another doctor might have." *Brown Hotel Company v. Marx, supra* at 915; *City of Covington v. Keal, supra; See* Restatement 2d Torts sec. 457; W. Prosser, Torts sec. 44 (1971). It is not necessary that Dr. Shein have anticipated the precise injury that Mrs. Deutsch claims to have suffered. As stated by Dean Prosser, "it is as if a magic circle were drawn about the person, and one who breaks it, even by so much as a cut on the finger, becomes liable for all resulting harm to the person, although it may be death." Prosser, Torts sec. 43.

Dr. Shein attempted to prove that no injury to the fetus should have resulted from the irradiation of Mrs. Deutsch. The record reflects, however, a divergence of medical opinion on the harmful effects of diagnostic radiation upon a fetus. Therefore, it is clear the medical opinions Mrs. Deutsch received were not "extraordinary." The fact remains, in any event, that whether the medical opinions Mrs. Deutsch received represented correct medical advice is of no import. Dr. Shein failed to adhere to the applicable standard of care and his negligence was a substantial factor in causing Mrs. Deutsch to be irradiated while pregnant. As a result, she sought medical advice about her condition. Neither doctor consulted advised her to have an abortion performed, but both were of the opinion that the extent of radiation she received would have dire consequences upon the developing fetus and upon Mrs. Deutsch's emotional health. Having put Mrs. Deutsch in a position from which it was reasonable to seek the medical services of other doctors, Dr. Shein is responsible for any injury to her resulting from her exposure to the risk involved in these medical services. *See* Restatement, Torts 2d sec. 457, comment b.

One of Mrs. Deutsch's demands for relief is her claim for compensation for mental suffering. It is well established in this jurisdiction that "an action will not lie for fright, shock or mental anguish which is

unaccompanied by physical contact or injury. The reason being that such damages are too remote and speculative, are easily simulated and difficult to disprove, and there is no standard by which they can be justly measured." *Morgan v. Hightower's Adm'r*, 291 Ky. 58, 59–60, 163 S.W.2d 21, 22 (1942). Dean Prosser opined that the value, if any, of this requirement "must lie in the opportunity which is afforded to the defendant to testify that there was no impact. He may be able to swear that within the period of the statute he has struck no one with his automobile, where he cannot be sure whom he may have frightened." W. Prosser, Torts sec. 54.

In line with the corroborating purpose of this "contact" requirement, the amount of physical contact or injury that must be shown is minimal. Contact, however, slight, trifling, or trivial, will support a cause of action. *Kentucky Traction & Terminal Co. v. Robman's Guardian*, 232 Ky. 285, 23 S.W.2d 272 (1929). However, it is necessary that the damages for mental distress sought to be recovered be related to, and the direct and natural result of, the physical contact or injury sustained. *Hetrick v. Willis*, Ky., 439 S.W.2d 942, 943 (1969). We find no difficulty in concluding that the physical contact necessary to support the claim for mental suffering occurred when, through Dr. Shein's negligence, Mrs. Deutsch's person was bombarded by x-rays.

This case is now reduced to the question of whether it must be reversed for retrial of the whole cause or whether it can be remanded for trial on the issue of damages alone pursuant to CR 59.01. The general rule used to determine whether a limited retrial should be ordered is where a distinct and severable issue is to be decided, a trial on that issue alone is appropriate unless such a retrial would result in injustice. *Nolan v. Spears*, Ky., 432 S.W.2d 425 (1968); *Allen v. Large*, Ky., 239 S.W.2d 225 (1951); *See* 5 Am.Jur.2d Appeal and Error

secs. 964–65. "The theory behind this rule is a party who has already had his day in court as to a particular issue may not have another opportunity to relitigate the same point unless a partial new trial will result in a miscarriage of justice." *Scuddy Mining Co. v. Couch*, Ky., 295 S.W.2d 553, 554 (1956). In *Nolan v. Spears, supra,* we reviewed the cases governing partial retrial and observed the decisions indicate we have strongly favored the direction of limited retrials, except where injustice would result. We adhere to that position today. *See Pratt v. Mountain Utilities Co., Inc.,* Ky., 594 S.W.2d 881 (1980).

Dr. Shein strenuously contested the allegation that he had been negligent in his examination of Mrs. Deutsch. This point was determined against him and we have affirmed that portion of the verdict. As set out in detail in this opinion, we have determined that Dr. Shein's negligent act was the legal cause of the irradiation of Mrs. Deutsch while she was pregnant. All that remains to be determined at a new trial is the amount of damages which will fairly compensate Mrs. Deutsch for the injury she suffered by reason of the irradiation. This issue in this case is distinct and separable from the questions of negligence and legal cause. A retrial of the issue of damages only will not work an injustice here.

In addition, we note that the finding of Dr. Shein's negligence was not challenged by cross-appeal. Where the jury finding of negligence is not challenged by cross-appeal and resulting injustice is not manifest, the retrial should be limited to the issue of damages. *Caton v. McGill*, Ky., 488 S.W.2d 345 (1972); *Nolan v. Spears, supra.* Where a cross-appeal is pursued and a limited retrial would be an injustice, a trial on all issues will be ordered. *Rice v. Rizk*, Ky., 453 S.W.2d 732 (1970).

For the convenience of the parties and of the trial court, we have prepared an instruction in accord with the principles expressed in this opinion to be used at retrial.

SPECIAL VERDICT

It has been established in this case that the negligence of Dr. Shein was a substantial factor in causing Mrs. Deutsch to be irradiated with x-rays and radioactive substances while she was pregnant.

The jury will answer the following question in accord with the directions hereinafter given.

What sum of money do you find from the evidence will fairly and reasonably compensate Mrs. Deutsch for the mental and physical pain and suffering which she has endured and the mental and physical pain and suffering which it is reasonably certain from the evidence she will yet endure by reason of the irradiation, not to exceed the sum of $250,000.00?

Answer   $_____

_____
(signature(s))

Immediately upon retiring to the Jury Room you will elect one of your number Foreman. Nine or more of you may answer the question submitted to you. If all twelve of you agree on the answer, the Foreman alone need sign at the bottom of the question. If less than twelve, but nine or more, agree then all those who agree must sign at the bottom of the question.

The judgment of the Jefferson Circuit Court and the decision of the Court of Appeals are affirmed in part and reversed in part and the cause is remanded to the Jefferson Circuit Court for a new trial on the issue of damages alone.

All concur.