**Michael NICHOLS, Appellant**

v.

**Michael P. HAZELIP and Steven Gregson, Appellees.**

**No. 2010–CA–002168–MR.**

Court of Appeals of Kentucky.

Jan. 13, 2012.

Discretionary Review Denied by Supreme Court Sept. 12, 2012.

---

Justin S. Peterson, Lexington, KY, for appellant.

Michael T. Connelly, Louisville, KY, for appellee Michael P. Hazelip.

Denise M. Helline, Louisville, KY, for appellee Steven Gregson.

Before KELLER, STUMBO, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

Michael Nichols appeals from a judgment entered by the Jefferson Circuit Court after a jury rendered a verdict in favor of Michael Hazelip and Steven Gregson, regarding a physical altercation that took place between the parties. For the reasons stated hereafter, we affirm.

On August 2, 2008, Nichols and his girlfriend, Mary Gaines, were playing golf at the Charlie Vettner Golf Course in Louisville, Kentucky. After teeing off on the 16th hole, and while looking for their golf balls, a person in the group behind them, which included Gregson and Hazelip, hit a ball that landed near Nichols and Gaines. According to Nichols, he yelled back at the group to indicate they were still within distance and to not hit another ball. Nichols and Gaines continued their round.

While Nichols waited to tee off on the 18th hole, Hazelip and Gregson approached the 17th green, located near the 18th hole's tee box. Although the parties had different accounts of what next transpired, a physical altercation began between Nichols and Gregson, and Hazelip intervened. Nichols testified that Gregson approached him and began pushing and hitting him while Hazelip put him in a choke hold until he began to lose consciousness. Gregson and Hazelip each testified that Gregson approached Nichols apologizing for almost hitting him with a golf ball on the 16th hole. They further testified that Nichols then swung a golf club at Gregson, who, in an attempt to get out of the way, stumbled backwards and fell to the ground, at which point Nichols began hitting Gregson. Hazelip testified that he intervened to pull Nichols off of Gregson. Following the altercation, Nichols and Gaines drove their golf cart to the clubhouse to report the incident.

Nichols filed a complaint against Gregson and Hazelip for assault and battery, seeking damages related to a shoulder injury he claimed was worsened as a result of the altercation. Gregson filed a counterclaim against Nichols alleging assault. After the presentation of evidence, the parties moved for directed verdicts, which the trial court denied, but ruled that Nichols' request for damages regarding his shoulder injury was not to be submitted to the jury since he failed to prove any injury was caused by the altercation. The jury found Nichols to be the initial aggressor in the incident, found in favor of Gregson on his counterclaim and awarded $50,000 in compensatory damages for pain and suffering and $200 in punitive damages. This appeal followed.

Nichols' first argument on appeal is that the trial court erred by denying his motion for a directed verdict in regards to Gregson's counterclaim. Specifically, Nichols alleges that (1) Gregson could not recover damages for mental suffering absent evidence of a physical injury or contact, and (2) the evidence demonstrated that Gregson was the aggressor in the physical altercation. We disagree.

Upon consideration of a motion for a directed verdict,

the trial court must draw all fair and reasonable inferences from the evidence in favor of the [non-moving party]. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the [non-moving party] is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citation omitted).

Nichols maintains that absent a physical injury, Gregson cannot be awarded damages for mental and emotional suffering. In support of this contention, Nichols points to the oft-cited rule of law stating that " 'an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury.' " *Deutsch v. Shein,* 597 S.W.2d 141, 145–46 (Ky.1980) (citation omitted). However *Deutsch* involved an action for negligence, whereas Gregson's claim involved an assault, and is therefore distinguish-

able. If recovery of damages for mental suffering were dependent upon evidence of physical contact or injury, one could never recover damages for an assault unless a battery also occurred. Leibson, *Kentucky Practice,* 13 Tort Law § 3:1 (2011). Instead, a clearer understanding of the law is articulated in *Brown v. Crawford,* 296 Ky. 249, 177 S.W.2d 1 (1943), wherein the court affirmed an award of damages for mental anguish on an assault claim. The court in *Brown* stated:

The testimony ... shows an assault of an aggravated nature. There is a sharp conflict in the authorities as to whether a recovery may be had against one guilty of negligence in causing fright resulting in physical injuries where there was no contemporaneous physical injury. This court is committed to the doctrine that in ordinary actions for mere negligence or where the injury to another is not willful, there can be no recovery for mental suffering where there has been no physical contact. However, the general rule is that there may be a recovery for physical pain and suffering as well as mental suffering resulting from fright caused by the willful wrong of another.... 'In estimating damages for an assault and battery the insult and indignity and injury to the plaintiff's feelings may be considered, and physical pain, mental suffering, or mental anguish, or all three, may be inferred to exist to some extent from proof of fright caused by an assault.'

*Id.* at 253, 177 S.W.2d at 3 (internal citations omitted). In other words, physical contact is not required to recover for fright or other mental suffering caused by an assault.

In the case at bar, Gregson presented evidence to support his claim that Nichols assaulted him on the golf course. Specifically, Gregson testified that he was in fear

when Nichols approached him preparing to swing a golf club. *See Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky.App.2001) (the tort of assault "requires the threat of unwanted touching of the victim[ ]") (citation omitted). Thus, if the jury believed the evidence warranted it, damages awarded based on Gregson's mental suffering were appropriate under the circumstances.

With respect to Nichols' argument that the evidence supported a finding that Gregson was the initial aggressor, conflicting evidence was presented, *i.e.,* Gregson testified that Nichols was the aggressor in the physical altercation. Other witnesses to the altercation also testified that Nichols was the initial aggressor and swung a golf club at Gregson. When conflicting evidence has been presented at trial, the jury is responsible for determining and resolving such conflicts. *Gibbs v. Wickersham,* 133 S.W.3d 494, 495 (Ky.App.2004) (citation omitted). Since evidence was presented to support a finding that Nichols was the initial aggressor, the trial court did not err by denying Nichols' motion for a directed verdict and submitting Gregson's assault claim to the jury.

Nichols next argues that the trial court erred by denying his motion for JNOV or, alternatively, his motion for a new trial because the jury's award to Gregson was excessive. Specifically, Nichols claims that the jury's award of compensatory damages for pain and suffering was an attempt to compensate Gregson for his attorney's fees, and was, therefore, excessive and should be reversed. We disagree.

Nichols filed a CR[1] 59 motion for a new trial claiming that the jury's award was excessive. Upon such a motion, "the trial court is charged with the responsibility of deciding whether the

jury's award appears to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court." *Burgess v. Taylor,* 44 S.W.3d 806, 813 (Ky.App.2001) (internal citations and quotations omitted). This court will not step " 'into the shoes of the trial court to inspect the actions of the jury.... [Rather], the appellate court reviews only the actions of the trial judge ... to determine if his actions constituted an error of law.' " *Gersh v. Bowman,* 239 S.W.3d 567, 574 (Ky.App.2007) (quoting *Burgess,* 44 S.W.3d at 813). In other words, this court will not "substitute our judgment on excessiveness ... for [the trial court's] unless clearly erroneous." *Gersh,* 239 S.W.3d at 574 (citation omitted).

In this case, the trial court instructed the jury that if it found in favor of Gregson on his claim of assault, it could award him up to $50,000 in compensatory damages, which the jury ultimately did. The evidence presented suggested Gregson feared for his life during the altercation, specifically at the moment he fell backwards while he claimed Nichols was preparing to swing a golf club at him. Gregson testified that he was lying on the ground expecting to be hit with a golf club. The trial court understood such a fear to be consistent with the award granted by the jury, and Nichols fails to cite any evidence contrary to this position. *See Burgess,* 44 S.W.3d at 813 (whether an award was given under the influence of passion or prejudice, and, therefore excessive, "is a question dependent on the nature of the underlying evidence[ ]") (citation omitted). Based on the evidence, we are unable to say the trial court erred by determining the jury's award was not in-

---

1. Kentucky Rules of Civil Procedure.

fluenced by passion or prejudice.[2]

Next, Nichols argues he should have been granted a new trial because defense counsel questioned a witness regarding Nichols' insurance coverage and questioned Nichols regarding his prior psychiatric care. Nichols fails to address how either question resulted in prejudice so as to affect his substantial rights, *i.e.*, affected the outcome of the case. *See* CR 61.01 (a court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties[ ]"). Thus, we fail to appreciate how this claim of error warrants a new trial.

Nichols' next argument is that the trial court erred by allowing both Gregson and Hazelip four peremptory strikes since their interests were not antagonistic under CR 47.03. We disagree.

We will not substitute our judgment for that of the trial court in determining whether antagonistic interests exist for the purpose of awarding additional peremptory challenges unless the trial court abused its discretion. *Sommerkamp v. Linton,* 114 S.W.3d 811, 814–15 (Ky.2003).

CR 47.03 provides, in part:

(1) In civil cases each opposing side shall have three peremptory challenges, but co-parties having antagonistic interests shall have three peremptory challenges each.

(2) If one or two additional jurors are called, the number of peremptory challenges for each side and antagonistic co-party shall be increased by one.

To determine if coparties have antagonistic interests, courts consider three factors: "1) whether the coparties are charged with separate acts of negligence[ ]; 2) whether they share a common theory of the case[ ]; and 3) whether they have filed cross-claims." *Sommerkamp,* 114 S.W.3d at 815 (internal citations omitted). The court shall consider other factors, including "whether the defendants are represented by separate counsel; whether the alleged acts of negligence occurred at different times; whether the defendants have individual theories of defense; and whether fault will be subject to apportionment." *Id.*

In the case at bar, the trial court properly considered the relevant factors in determining that Gregson and Hazelip maintained antagonistic interests. In its order denying Nichols' motion for a new trial, the trial court explained:

[The codefendants] were represented by separate counsel. Nichols sued for separate and distinct acts of negligence, as demonstrated by the fact that each defendant was an individual actor not acting in concert with the other. According to the testimony of all parties, each Defendant had a different role in the altercation. Apportionment was also at issue, and it was included in the jury's instructions. Most significant is Gregson's counterclaim against Nichols. The counterclaim caused the two defendant's interests to become further divergent. While Hazelip's case rested purely on defending against the negligence claim, Gregson's case had an offensive intent through attempting to prove his counterclaim.

Nichols fails to address any specific flaw in the trial court's reasoning in the preceding passage. As a result, we find no abuse of discretion.

Next, Nichols argues the trial court erred by granting Gregson's and Ha-

---

**2.** Nichols maintains that the jury's award was an attempt to award Gregson attorney fees; however, we find nothing in the record to support such a contention.

zelip's motion to exclude damages related to Nichols' shoulder injury. We disagree.

Even if we assume the trial court should have permitted Nichols to submit his request for damages in regards to his shoulder injury to the jury, based on the evidence before it, the jury found Nichols to be the aggressor in the physical altercation, and therefore not entitled to any recovery from the incident. Despite the jury not being afforded the opportunity to award Nichols damages for his injured shoulder, we see no likelihood the jury would have awarded Nichols damages since it found him to be the party at fault by unanimous vote. Thus, any error alleged by Nichols in this regard is harmless because his substantial rights were not prejudiced. *See* CR 61.01.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.